UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ZOTEC PARTNERS, LLC and MEDICAL BUSINESS SERVICES, INC., <br>     *Plaintiffs*, <br><br> *vs.* <br><br> THOMAS J. HERALD and JAMES P. HERALD, <br>     *Defendants.* | ) <br> ) <br> ) <br> )    1:13-cv-00792-JMS-DKL <br> ) <br> ) <br> ) <br> ) |

## ORDER

Presently pending before the Court is a Motion to Remand filed by Plaintiffs Zotec Partners, LLC ("Zotec") and Medical Business Services, Inc. ("MBS"). [Dkt. 17.]

## I.
## BACKGROUND[1]

On May 19, 2010, Zotec, MBS, and Defendants Thomas Herald and James Herald entered into a Put and Call Option Agreement (the "Agreement"). [Dkt. 1-1 at 4, ¶ 8.] The Agreement was amended on August 18, 2011 and September 7, 2011. [*Id.* at 4-5, ¶¶ 9-10.] Also on September 7, 2011, Zotec, MBS, and the Heralds closed on Zotec's purchase of all of the Heralds' shares in MBS. [*Id.* at 5, ¶ 11.] Subsequently, Zotec and MBS (which was then owned by Zotec by virtue of Zotec's purchase of the Heralds' shares) received a third-party claim arising from MBS's business prior to Zotec's acquisition of MBS. [*Id.* at 3, ¶ 1 and 5, ¶ 12.] Zotec and MBS then notified the Heralds of their belief that the Heralds had breached the representations and warranties contained in Section 4.1(j) of the Agreement. [*Id.* at 5, ¶ 14.] Those representations and warranties included that MBS had complied with certain applicable laws; that there were no pending or threatened "audits, claims, assessments, adjustments,

---

[1] The background facts are taken from the allegations of the Complaint, [dkt. 1-1 at 3-9], as well as the Put and Call Option Agreement referenced in the Complaint and filed with the opposition to the Motion to Remand, [dkt. 20-1].

challenges or notices from any governmental agency or entity or any third party payor with regard to any claims MBS submitted on behalf of its clients or customers…"; that MBS maintained all records in compliance with applicable laws; that MBS had not given or received in violation of any laws any payments or other remuneration in violation of the "Anti Kickback Statute"; and that MBS had "complied in all material respects and is currently in material compliance with all federal and state mandated regulations, rules, or orders applicable to privacy, security and electronic transactions, including without limitation, regulations promulgated under HIPAA." [Dkt. 20-1 at 22-23.]

Zotec and MBS demanded that the Heralds indemnify them in connection with the third-party claim under Section 7.1 of the Agreement, [dkt. 1-1 at 5, ¶ 14], which provides that:

> [P]rior to the Closing, MBS and each of the Stockholders, jointly and severally, and…from and after the Closing, the Stockholders, jointly and severally, shall indemnify Zotec and (after the Closing) MBS from, against and in respect of any and all losses, liabilities, deficiencies, penalties, fines, costs, damages and expenses whatsoever…that may be suffered or incurred by Zotec and/or MBS from or by reason of (a) any inaccuracy or breach of a representation or warranty made by the Stockholders in this Agreement, the Schedules or any other certificate or document delivered by the Stockholders pursuant to this Agreement….

[Dkt. 20-1 at 40.]

Section 7.4(a) of the Agreement provides that a party entitled to indemnity must promptly give notice of a third-party claim against it to the party obligated to indemnify, and Section 7.4(b) states that if such notice is given, the indemnifying party is entitled to participate in the defense of the third-party claim and, if it does not assume the defense, is bound by any determination made in the third-party claim. [*Id.* at 41-42.]

Although Zotec and MBS "repeatedly notified" the Heralds of the third-party claim and demanded indemnification under the Agreement, [dkt. 1-1 at 5, ¶ 14], the Heralds did not assume

defense of the third-party claim, and have denied that they breached any representations or warranties under the Agreement. [*Id.* at 5-6, ¶¶ 14, 22.]

Zotec and MBS filed a Complaint in Hamilton Circuit Court on April 2, 2013, seeking a declaratory judgment that the Heralds breached the Agreement, did not assume the defense of the third-party claim against Zotec and MBS, and will therefore be bound by any determination of that claim. [Dkt. 1-1 at 6.] The Heralds filed a Notice of Removal on May 14, 2013, alleging that this Court has diversity jurisdiction because, even though MBS and the Heralds are all citizens of Florida, MBS "is not a proper party and its citizenship should be disregarded." [Dkt. 1 at 3-4, ¶ 9.][2] Specifically, the Heralds argue that "MBS, which was not a party to the Agreement, has no colorable claims against the Herald Brothers and is joined as a plaintiff only in an obvious attempt to destroy diversity." [*Id.*] On June 13, 2013,[3] Zotec and MBS filed a Motion to Remand the case to Hamilton Circuit Court. [Dkt. 17.]

---

[2] The Heralds stated in the Notice of Removal that Zotec is "an Indiana limited liability company with its principal place of business in Carmel, Indiana [and therefore]…is a citizen of the State of Indiana for purposes of removal." [*Id.* at 3, ¶ 6.] In the Motion to Remand, Zotec stated that it is "an Indiana limited liability company with members who are citizens of the states of Indiana, Texas, California, Washington, Maryland, Idaho, Nevada and Arizona. Therefore, for purposes of diversity jurisdiction, Zotec is also a citizen of those states." [Dkt. 18 at 2, ¶ 1.] Though not the subject of the Motion to Remand, the Court notes that the parties' representations regarding Zotec's citizenship are inadequate, and do not provide enough information for the Court to determine that citizenship. The citizenship of an unincorporated association is the citizenship of all of the members, *Hart v. Terminex Int'l*, 336 F.3d 541, 542 (7th Cir. 2003). A court needs to know the jurisdictional details; conclusory allegations are insufficient. *See Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 321 (7th Cir. 2002) ("To determine the citizenship [of an unincorporated entity] we need to know the name and citizenship(s) of its general and limited partners"); *see also Guar. Nat'l Title Co., Inc. v. J.E.G. Assocs.*, 101 F.3d 57, 58 (7th Cir. 1996) ("At oral argument we told counsel that it is essential to put into the record the name and citizenship of each partner"). While Zotec lists the states that its members are citizens of, it must provide the specific names of each member and the citizenship which corresponds with each.

[3] The removal was timely, because it was filed within thirty days of service of the Complaint on Defendants, [dkt. 1 at 2, ¶ 3]. 28 U.S.C. § 1446(b).

3

## II.
### APPLICABLE STANDARD

Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," between citizens of different states. 28 U.S.C. § 1332(a)(1). "If at any time…it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Regardless of the "waste of effort" that results from a case partially or fully litigated in the wrong court, "both the Supreme Court and [the Seventh Circuit Court of Appeals] have noted time and again that subject matter jurisdiction is a fundamental limitation on the power of a federal court to act." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 980 (7th Cir. 2000).

The party seeking to invoke federal jurisdiction must establish both complete diversity of citizenship and that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The issue here is whether there is complete diversity among the parties.

## III.
### DISCUSSION

The Heralds argue in their Notice of Removal that "MBS has no real interest in the outcome of the present litigation," it is "neither a real party in interest nor an indispensable party," and the indemnification demand shows that only Zotec has incurred expenses in connection with the third-party claim. [Dkt. 1 at 4, ¶¶ 10-11.] Therefore, they assert, MBS's citizenship – which is the same as the Heralds' citizenship and, thus, destroys diversity – should be disregarded. [*Id.* at 4-5, ¶ 12.]

In their Motion to Remand, Zotec and MBS argue that MBS is a real party in interest because: (1) it is a party to the Agreement, it has been injured by the Heralds' breach of the

Agreement, and it seeks to enforce its rights under the Agreement, [dkt. 18 at 4-5]; and (2) billing statements relating to the third-party claim show that the costs were incurred by "Zotec and/or MBS" and were addressed to "MBS c/o Zotec" or just "MBS," and MBS faces liability on the third-party claim through a judgment or settlement in addition to defense costs, [*id.* at 5-6]. Zotec and MBS also assert that they are entitled to their attorneys' fees and costs in connection with the Motion to Remand because the removal was improper. [*Id.* at 6-7.]

The Heralds respond that: (1) MBS is really the "subject" of the Agreement, not a party who can sue its former owners for a breach, [dkt. 20 at 4-5]; (2) the indemnification request relates to pre-closing representations, and the Heralds did not make any pre-closing representations to MBS, so they have no obligation to indemnify MBS for pre-closing conduct, [*id.* at 5-7]; (3) MBS has not incurred any loss for which it can be indemnified because Zotec has paid for all expenses associated with the third-party claim thus far, and the "mere possibility" that MBS may incur a loss in the future that might trigger the indemnification provision is not enough, [*id.* at 8-11]; (4) Zotec and MBS seek an improper advisory opinion because the declaratory judgment they seek relating to MBS would be based on events that might occur in the future, [*id.* at 10]; and (5) removal was proper, so there is no basis for awarding fees and costs, [*id.* at 11].

On reply, Zotec and MBS argue that the Heralds have misconstrued the plain language of the Agreement, that MBS "clearly has a post-closing right to indemnification by the Heralds," that billing statements do not show that expenses have only been incurred by Zotec in connection with the third-party claim, and that they are not seeking an advisory opinion because their request for a declaratory judgment relates to the existing third-party claim, not to some future claim. [Dkt. 21 at 2-9.]

5

### A. Fraudulent Joinder

Under the doctrine of fraudulent joinder, "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'" *Morris v. Nuzzo*, 718 F.3d 660, 2013 U.S. App. LEXIS 10473, *10 (7th Cir. 2013) (*citing Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). The doctrine's purpose is to "strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove." *Morris*, 2013 U.S. App. LEXIS 10473 at *11 (*quoting* 14B Wright, Miller, Cooper & Steinman, § 3723 pp. 788-93).

"An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant….At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos*, 959 F.2d at 73. The claim must be "utterly groundless" in order to invoke the fraudulent joinder doctrine. *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). "[T]he burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009); *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (Rule 12(b)(6) inquiry "is more searching than that permissible when a party makes a claim of fraudulent joinder"). If the removing defendant meets this "heavy burden," the federal court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume

jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur*, 577 F.3d at 763.

At the outset, the Court notes that the doctrine of fraudulent joinder most commonly applies where the defendant seeking removal has argued that a plaintiff has fraudulently named a nominal *defendant*, and a determination that the doctrine applies results in dismissal of that nominal defendant. Here, however, the Heralds appear to seek to apply the doctrine against a nominal *plaintiff*,[4] and ask the Court to disregard a *plaintiff's* citizenship because its claims against them are allegedly groundless. The Seventh Circuit Court of Appeals has noted that if a plaintiff is merely a nominal party, "it would be ignored in deciding whether there was diversity of citizenship[; t]he citizenship of the real parties in interest is what counts." *Spartech Corp. v. Opper*, 890 F.2d 949, 952-53 (7th Cir. 1989). This indicates that the fraudulent joinder doctrine can also be applied in this context. *See also Intershoe, Inc. v. Filanto S.p.A.*, 97 F.Supp.2d 471, 474 (S.D. N.Y. 2000) ("Although most frequently applied to the joinder of unnecessary defendants, the fraudulent joinder doctrine also requires the court to disregard the presence of a plaintiff who is not a 'real part in interest'") (*quoting Blakeman v. Conroy*, 512 F.Supp. 325, 327 (E.D. N.Y. 1981)).

The Heralds' argument for disregarding MBS's citizenship is three-fold. They argue: (1) that MBS is really the "subject" of the Agreement, so is not a party with a right to sue them, [dkt. 20 at 4-5]; (2) the third-party claim, even if against MBS, cannot result in liability against them to indemnify MBS because the Agreement's indemnification provisions only apply to post-closing representations made to MBS, and the third-party claim relates to pre-closing

---

[4] While the Heralds do not specifically refer to "fraudulent joinder" in the Notice of Removal, they cited cases discussing the doctrine and discuss it in their response to the Motion to Remand.

representations, [*id.* at 5-7]; and (3) MBS has not incurred any loss to date for which it can be indemnified, [*id.* at 8-11]. The Court rejects each of these arguments.

      First, the Heralds rely on *Spartech*, 890 F.2d 949, to argue that MBS is really the "subject" of the Agreement, but that reliance is misplaced. There, the defendant was arguing against the existence of diversity jurisdiction because the plaintiff was not the real party in interest (rather its subsidiary was), and because the subsidiary, which was not named as a plaintiff, was indispensable and would destroy diversity. The Seventh Circuit Court of Appeals found that the plaintiff was a real party in interest because it had paid the taxes that were the subject of the lawsuit, on behalf of the subsidiary. The Court also concluded that the subsidiary was not an indispensable party because it was the subject of the agreement and, therefore, diversity existed. The Court noted, however, that the subsidiary would be an indispensable party if the plaintiff were suing for a wrong done to the subsidiary. Unlike in *Spartech*, MBS asserts claims on its own, as a party to an Agreement which provides MBS with certain rights. It is not merely the "subject" of the Agreement. Additionally, the Heralds' reliance on *Spartech* turns the case on its head. The *Spartech* court concluded that it did not need to consider the citizenship of the subsidiary because it was the subject of the contract and, thus, not an indispensable party. But whether MBS is an indispensable party is irrelevant here, and confuses the concept of fraudulent joinder with the concept of whether a party is indispensable. As one district court explained, "[a]n indispensable party under Rule 19(a) is one that *must* be joined in order to fully resolve the dispute without any resulting prejudice to parties," while "the doctrine of fraudulent joinder, in contrast, asks whether a party *may* properly be joined in a particular suit." *Mallinckrodt, Inc. v. Andrx Labs. Inc.*, 2006 U.S. Dist. LEXIS 68110, *9-10 (E.D. Mo. 2006)

8

(emphasis in original). Whether MBS is an indispensable party – an issue the Court need not decide – is irrelevant to whether it is a proper plaintiff here with a real interest in the litigation.

Second, the Court notes again that in the context of a defendant seeking to invoke the doctrine of fraudulent joinder to remove a case to federal court, it must view the facts and law in the light most favorable to MBS. *Poulos*, 1992 U.S. App. LEXIS 4660 at *2. Based on the language of the Agreement, and on the Court's extremely limited knowledge of the nature of the third-party claim, the Court cannot conclude that MBS has no interest in the litigation, or that MBS's claims meet the *Walton* court's "utterly groundless" standard. The Court hesitates to draw conclusions regarding the language of the Agreement at this stage of the litigation, but finds that there is at the very least a legitimate question regarding whether the Heralds' quotation of Section 7.1's indemnification provision is somewhat misleading and does not acknowledge that the language makes a distinction regarding the timing of the claim, not the timing of the representation. The Heralds argue that Section 7.1 only requires indemnification in certain circumstances. They point out that Zotec and MBS rely on Section 7.1(b), which requires indemnification for "[a] breach of a covenant or agreement made by the Stockholders pursuant to the Agreement," and further on Section 4.1(j), which, the Heralds argue, only required them to make certain representations to Zotec, and not to MBS. [Dkt. 20 at 5-6.] Whether MBS can reap the benefit of Section 4.1 and, ultimately, whether Section 7.1 requires the Heralds to indemnify MBS for the third-party claim is far from clear at this time,[5] and is an issue left for another day. However, for purposes of the fraudulent joinder doctrine, the Court finds that MBS is a real party in interest by virtue of the fact that it is a party to the Agreement, it faces a third-party claim, and it has sought indemnification from the Heralds under the Agreement.

---

[5] Indeed, the Heralds state in their Answer and Affirmative Defenses that "the [Agreement], which forms the basis for Zotec's indemnification claim, is ambiguous." [Dkt. 19 at 4, ¶ 37.]

9

Third, the Court finds the Heralds' argument that MBS has not yet incurred any loss for which it could seek indemnification inaccurate and irrelevant. The key here is whether there is any scenario under which the Heralds could be required to indemnify MBS for the existing third-party claim.[6] As discussed above, there is. Whether MBS has yet incurred defense-related expenses or paid a judgment or settlement in connection with the third-party claim is irrelevant. If it has not yet, it may have to in the future. And, in any event, the indemnification demand and billing records do refer to MBS along with Zotec, making it not at all clear that defense costs have only been allocated to Zotec. [*See* dkts. 1-2 at 2 (referring to the "Indemnified Person" as "MBS/Zotec," attaching a schedule of costs and expenses incurred by "Zotec and/or MBS," and stating that "MBS/Zotec" will continue to work with the Heralds regarding the third-party claim); 1-3 (attaching legal invoices for "MBS c/o Zotec" or "MBS," and noting on mailing receipt that client matter is "MBS/OIA").]

At this stage of the litigation, the Court simply cannot conclude that MBS has no interest in this litigation, or that its claims are utterly groundless. Accordingly, it must consider MBS's citizenship and concludes that, because MBS and the Heralds are all citizens of Florida, the Court cannot exercise diversity jurisdiction over this matter and it must be remanded.

### B. Attorneys' Fees and Costs

Zotec and MBS seek their attorneys' fees and costs in connection with the Motion to Remand under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a

---

[6] The Court rejects the Heralds' argument that Zotec and MBS seek an advisory opinion. To the contrary, Zotec and MBS request a declaratory judgment relating to an *existing* third-party claim, and the Heralds' obligations – both now and going forward – regarding that *existing* claim.

result of the removal." The Seventh Circuit Court of Appeals has instructed that the award of attorneys' fees and costs is appropriate under the following circumstances:

> [I]f, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees. By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees.

*Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009).

Through the Notice of Removal, the Heralds appear to have sought a quick disposition on the merits of MBS's claims against them, which would be improper at this stage. But the facts remain that: (1) MBS is a party to the Agreement; (2) MBS is the subject of a third-party claim made after the closing; and (3) the Agreement provides that the Heralds will indemnify MBS after the closing for certain such third-party claims. The Court's determination that the fraudulent joinder doctrine does not apply here was not a close call under the applicable law, and the Heralds should have known based on a review of that law, and of the language of the Agreement, that there was no basis for removal. Accordingly, the Court finds that Zotec and MBS are entitled to their attorneys' fees and costs.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Zotec's and MBS's Motion to Remand, [dkt. 17], including their request for attorneys' fees and costs in connection with the Motion to Remand. The parties are **ORDERED** to confer regarding the amount of such attorneys' fees and costs and, if agreement cannot be reached regarding the amount by **August 16, 2013**, Zotec and MBS are **ORDERED** to file a Petition setting forth the amounts they seek by that date. If agreement is reached, the parties shall file a statement by that date advising the Court

accordingly. Should the filing of a Petition be necessary, the Heralds will have until **August 23, 2013** to respond to the Petition. No reply is necessary.

Upon resolution of the fees and costs issue, this matter will be **REMANDED** to the Hamilton Circuit Court pursuant to 28 U.S.C. § 1447(d).

08/01/2013

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Humberto H. Ocariz
SHOOK HARDY & BACON, LLP
hocariz@shb.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com

John T. Schlafer
FAEGRE BAKER DANIELS LLP - Indianapolis
john.schlafer@faegrebd.com